IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3151-D

| | | |
|---|---|---|
| DOUGLAS GENE WHITFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DICK JENKINS, SHERIFF et al., | ) | |
| | ) | |
| Defendants. | ) | |

On August 26, 2010, Douglas Gene Whitfield ("Whitfield" or "plaintiff"), then a pretrial detainee proceeding pro se, filed a complaint under 42 U.S.C. § 1983 [D.E. 1]. On July 7, 2011, the court reviewed Whitfield's original and amended complaints, allowed Whitfield's claim concerning unsanitary food to proceed, and directed Whitfield "to amend his claim concerning unsanitary food to name defendant(s) who were actually responsible for the unsanitary food and explain how any defendant(s) allegedly inflicted any injury" by July 28, 2011 [D.E. 11]. On July 15, 2011, Whitfield filed a notice of interlocutory appeal [D.E. 12]. On July 18, 2011, Whitfield amended his complaint to name as defendants "Officer[]s Lee [("Lee")], [and] Stancil [("Stancil")]" and Lieutenant Smith ("Smith") (collectively, "defendants") [D.E. 14]. On November 18, 2011, Stancil and Smith filed an answer [D.E. 46].

On January 24, 2012, the court denied several motions and directed counsel for Stancil and Smith to file a response stating whether Lee had been served [D.E. 53]. On February 17, 2012, the court directed defendant Officer Benjamin Leake ("Leake") to answer the complaint [D.E. 55]. That day, Leake filed an answer [D.E. 56].

On February 22, 2012, Whitfield filed a motion for leave to amend his complaint to name Leake, rather than Lee, as a defendant [D.E. 57]. On April 20, 2012, defendants moved for summary judgment [D.E. 59]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Whitfield about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 61]. On May 1, 2012, Whitfield responded in opposition to the motion for summary judgment [D.E. 62]. As explained below, the court grants Whitfield's motion to amend the complaint and grants defendants' motion for summary judgment.

I.

Whitfield's claim concerns his allegation that Leake and Stancil served him "a molded tray of 'unsanitary food,' bread and meat [with gravy], containing growing-mold," which caused him severe gastrointestinal distress for four days while he was a pretrial detainee at the Nash County Jail between February 2, 2010 and April 16, 2010. 2d Am. Compl. [D.E. 14] 2. Whitfield further alleges that he complained to Leake and Stancil about the food, and that they responded that there was "'nothing [that they could] do about it.'" Id.; see also Witness Statement [D.E. 14-1]. Whitfield "believes [that] he had food poison[ing]" as he "vomit[ed] the unsanitary food . . . . [and] was not even able to hold water on his stomach for [four] days after, . . . but was again denied medical treatment." 2d Am. Compl. 2. Whitfield then "wrote a grievance letter on a plain sheet of paper" to complain to Smith about the food. Id.; see Witness Statement ("Whitfield . . . wrote . . . Smith and never got a response."); Smith Aff. [D.E. 60-2] ¶ 9 & Ex. A ("Letter from Whitfield to Smith").

In response, Smith instructed Whitfield to "fill out a sick call request so that he could be seen by the jail nurse." Smith Aff. ¶ 10 & Ex. B ("Smith's Response to Whitfield"). Smith states that he "did not personally receive a sick call request form from . . . Whitfield." Smith Aff. ¶ 10. Additionally, according to Smith, "Whitfield did not complain to [Smith] that his food was

2

unsanitary, molded, or otherwise inadequate" or that he suffered from food poisoning. Id. ¶¶ 11–12. Smith states that he "never witnessed . . . Whitfield vomit or otherwise appear ill." Id. ¶ 12. Smith also reviewed Whitfield's prisoner file and found that "Whitfield did not submit any formal grievance forms in 2009, 2010, 2011, or 2012." Id. ¶ 8.

The food served to detainees at the Nash County Jail is "provided by a contractor, . . . . [which] provides the food and its staff cooks all of the meals in [the jail's] on-site kitchen . . . ." Id. ¶ 5. "At all times relevant to this action, [the contractor] had a staff of registered dieticians who created menus based on a 3,000 calorie per day diet . . . . [and] sent letters confirming the nutritional adequacy of the meals . . . ." Id. ¶ 6. Detention officers, including Leake and Stancil, are responsible for providing the food prepared by the kitchen staff to the inmates. Id. ¶ 7; see also Leake Aff. [D.E. 60-3] ¶ 4; Stancil Aff. [D.E. 60-4] ¶ 4. Leake and Stancil do not specifically recall providing food to Whitfield between February and April 2010, but state that "if an inmate ha[s] any issue with his meal, . . . . [Leake and Stancil] . . . take the tray, cover it[,] and take it to the kitchen . . . ." Leake Aff. ¶ 6; Stancil Aff. ¶ 6. Leake and Stancil state that it is the duty of the kitchen staff to provide a complaining inmate with a new tray of food. Id. Leake and Stancil state that after an inmate complains about his food, they direct the inmate to complete a grievance form and then give such completed form to Smith. Leake Aff. ¶ 7; Stancil Aff. ¶ 7. Additionally, according to Leake and Stancil, when an inmate requests medical attention, they "direct the inmate to submit a sick call request . . . ." Leake Aff. ¶ 9; Stancil Aff. ¶ 9. Both Leake and Stancil state that Whitfield never complained about his food to them or informed them that he had food poisoning, that they never received any grievance or sick call request from Whitfield, and that they "never witnessed . . . Whitfield vomit or otherwise appear ill." Leake Aff. ¶ 10; Stancil Aff. ¶ 10.

3

Defendants also have submitted the affidavit of Nakia Williams ("Williams"), a nurse at the Nash County Jail. Williams states that all sick call requests, refusals of medical attention, and nursing care notes are documented in an inmate's medical file. Williams Aff. [D.E. 60-5] ¶¶ 4–5. Williams "reviewed . . . Whitfield's medical records, as well as [her] notes . . . . [and found] no records or notes reflecting any complaints about stomach problems, vomiting, or food poisoning." Id. ¶ 6. Williams "do[es] not recall . . . Whitfield ever complaining to [her] that he had been served molded food, or about stomach problems, vomiting, or food poisoning." Id. ¶ 7. During the relevant timeframe, Whitfield twice complained of knee problems, but refused to complete sick call request forms about these ailments. Id. ¶¶ 10–11. According to Williams, Whitfield's file does not include any other reports of physical problems. Id. ¶ 9. On April 16, 2010, Whitfield was transferred to Craven Correctional Institution ("Craven") "within [two] hours" after his attorney notified the Nash County Sheriff that Whitfield needed medical care for his knee. Whitfield Letter [D.E. 1-1] 2. At Craven, Whitfield "saw a doctor immediately and received a cane to help [him] walk and medication for . . . swelling."

II.

In considering the motion for summary judgment, the court views the evidence in the light most favorable to Whitfield and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must come forward and

4

demonstrate an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. If the moving party meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

Courts evaluate confinement conditions of pretrial detainees under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 534 n.16 (1979). However, the analysis under the due process clause and the analysis under the Eighth Amendment are very similar. See, e.g., Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); Riley v. Dorton, 115 F.3d 1159, 1166–67 (4th Cir. 1997) (en banc), abrogated on other grounds by Wilkins v. Gaddy, 130 S. Ct. 1175 (2010) (per curiam); Hill v. Nicodemus, 979 F.2d 987, 990–92 (4th Cir. 1992). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted); see Grayson, 195 F.3d at 695. "[T]he first showing requires the court to determine whether the deprivation of the basic human need was objectively sufficiently serious." Strickler, 989 F.2d at 1379 (emphasis and quotation omitted). The second showing "requires [the court] to determine whether subjectively the officials acted with a sufficiently culpable state of mind." Id. (emphasis, alteration, and quotation omitted).

To satisfy the subjective showing, a plaintiff must plead that the official acted with deliberate indifference. See, e.g., Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Strickler, 989 F.2d at 1379. "While . . . deliberate indifference entails something more than mere negligence, . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with

5

knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). An official acts with deliberate indifference when he actually knows of and disregards "an objectively serious condition, medical need, or risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997); see Farmer, 511 U.S. at 837–38; Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); Waybright v. Frederick Cnty., Md., 528 F.3d 199, 206 (4th Cir. 2008). "It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (quotation and citation omitted); Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir. 1978).

Defendants have shown that they were not aware of the allegedly unsanitary food's being provided to Whitfield, or of the ill effects that Whitfield allegedly suffered from consuming such food. The one complaint that Whitfield brought to Smith's attention was for an unspecified "medical condition" and Smith was not deliberately indifferent to Whitfield's medical need by instructing Whitfield to complete a sick call request and thus obtain medical treatment. See Milton v. Turner, 445 F. App'x 159, 165 (11th Cir. 2011) (per curiam) (unpublished); Spruill v. Gillis, 372 F.3d 218, 237–38 (3d Cir. 2004); Jordan v. Fischer, 773 F. Supp. 2d 255, 277 (N.D.N.Y. 2011).

In opposition to this conclusion, Whitfield asserts that he "filed sick call after sick call with no response" and wrote "grievances . . . over the food and the denial of medical care . . . ." Pl.'s Mem. Opp'n Mot. Summ. J. [D.E. 62] 2. Whitfield's wholly conclusory assertions—unsupported by any reference to objective criteria such as date, recipient, or any other detail permitting further inquiry—fail to present a genuine issue of material fact sufficient to defeat summary judgment. See Johnson v. Ozmint, 567 F. Supp. 2d 806, 816 (D.S.C. 2008).

6

III.

In sum, the court GRANTS Whitfield's motion to amend the complaint [D.E. 57], and DISMISSES Whitfield's claims against Leake. The court GRANTS defendants' motion for summary judgment [D.E. 59]. This action is DISMISSED. The Clerk of Court shall close the case.

SO ORDERED. This 22 day of June 2012.

JAMES C. DEVER III
Chief United States District Judge